UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------X

YASH RAJ FILMS (USA),

                Plaintiff,         **MEMORANDUM AND ORDER**

    -against-                      05-CV-3811 (FB) (KAM)

RAKESH KUMAR *et al.*,

                Defendants.

------------------------------------------X

MATSUMOTO, United States Magistrate Judge:

        On June 5, 2007, the undersigned conducted a conference regarding various pending discovery motions in this copyright infringement action. At the conference, the court made several discovery rulings, including granting plaintiff's motion to quash the subpoenas served on plaintiff's counsel (docket no. 83) on the basis that "Defendants have not demonstrated that they are unable to obtain the information sought from plaintiff's counsel from other individuals, such as plaintiff's employees and other witnesses to the seizures." (*See* Minute Entry for proceedings held on 6/5/07.)

        Defendants timely filed written objections to the court's ruling, pursuant to Fed. R. Civ. P. 72, before the Honorable Frederic Block, the District Judge supervising this matter. In their submission, defendants included an additional declaration by defendant Bela Kumar, dated June 14, 2007 (the

-1-

"Kumar 6/14/07 Decl."), in which Ms. Kumar provided further facts not previously raised in her prior declaration dated April 17, 2007 (the "Kumar 4/17/07 Decl."). (*See* docket nos. 91 (attaching Kumar 4/17/07 Decl.) and 94 (attaching Kumar 6/14/07 Decl.).) Defendants offered no explanation as to why they did not submit the June 14, 2007 Kumar Declaration earlier when this court first considered the plaintiff's motion, other than a sudden refreshing of Ms. Kumar's recollection as she was being prepared for her deposition. Judge Block considered the defendants' objections and found that "[t]here is nothing . . . to suggest that Magistrate Judge Matsumoto's grant of plaintiff's motion to quash subpoenas served on its counsel was clearly erroneous or contrary to the law." (Docket no. 100, 8/24/07 Order at 3.) Judge Block directed defendants to bring the additional facts before the undersigned for consideration within ten days of entry of his order. (*Id.* at 4.)

On September 10, 2007, defendants filed a motion for reconsideration[1] of the court's June 7, 2007 order granting plaintiff's motion to quash the subpoenas served on its counsel. (*See* docket no. 104.) Plaintiff submitted opposing declarations from its counsel and Lieutenant John Mendez of the New York

---

[1] It appears that defendants' motion for reconsideration is untimely because it was not made within ten days of the court's June 5, 2007 ruling. *See* Local Civil Rule 6.3. Nonetheless, given Judge Block's directive, this court has considered defendants' motion to reconsider.

Police Department ("NYPD").  (*See* docket no. 108.)  Having considered the additional submissions by the parties, including Ms. Kumar's June 14, 2007 declaration, the court denies the defendants' motion for reconsideration.

## I. BACKGROUND

The subpoenas at issue in defendants' motion for reconsideration were served by defendants on plaintiffs' attorneys, William Poppe, Esq. ("Poppe"), Megha Bhouraskar, Esq. ("Bhouraskar") and the Managing Partner of Poppe and Bhouraskar's law firm, Poppe & Bhouraskar, LLP.  The subpoenas seek all non-privileged and non-work product records and documents related to four topics:

> (1) plaintiff's counsel's prosecution of the copyright registrations for 109 of plaintiff's films, listed in Exhibit A of the complaint;
>
> (2) litigation by plaintiff's counsel related to any of plaintiff's films listed in Exhibit A of the complaint;
>
> (3) the March 12, 2003 raid conducted by the New York Police Department on three locations, including defendants' home; and
>
> (4) the representation by plaintiff's counsel of any of thirty-four individuals and entities, as it relates to the films listed in Exhibit A of the complaint.

The subpoenas also seek the depositions of plaintiff's counsel. (*See* docket no. 83, Exhs. A-C.)

The defendants' motion for reconsideration focuses on

plaintiff's counsel's presence during the March 12, 2003 NYPD seizure of allegedly infringing DVDs and other materials from three locations, including the defendants' residence and Rakesh Kumar's business locations. In her June 14, 2007 declaration, Ms. Kumar states that her memory as to the events on March 12, 2003 was "refreshed" in connection with her preparation for her June 12, 2007 deposition, but does not explain what documents or evidence prompted her memory to be refreshed. (Kumar 6/14/07 Decl. ¶ 7.) She states that she was not involved in her husband Rakesh Kumar's video business, but she was present on March 12, 2003 when the NYPD conducted a search of her and her husband's residence. (*Id.* ¶¶ 4, 14, 15.)

Ms. Kumar states that during the search, the NYPD seized various items from her home and placed them in the living room of her home. (*Id.* ¶ 28). She states that a man and a woman whom she later learned were Mr. Poppe and Ms. Bhouraskar were present in her home during the search and seizure. (*Id.* ¶¶ 30, 31.) During the search, a package containing DVDs of Indian movies was delivered to her home. (*Id.* ¶ 32.) The package was delivered to the Kumar residence and addressed to Avatar Singh, a business colleague of her husband who, like her husband, was in the business of buying and selling Indian movies. (*Id.* ¶¶ 22, 23.) Ms. Kumar states that Mr. Singh frequently had packages delivered to the Kumars' home, and that he had come to the Kumar

residence on the day of the search because he was expecting the package. (*Id.* ¶¶ 23, 24.)

According to Ms. Kumar, Mr. Poppe opened the package for Mr. Singh and threw its contents onto the living room floor, mixing the DVDs from the package with the items placed in the living room by the NYPD. *(Id.* ¶¶ 33-35.) Ms. Kumar claims that although she told Mr. Poppe not to mix the DVDs from the package with the other items, Mr. Poppe continued to do so. *(Id.* ¶¶ 36-38.) Ms. Kumar states that later that day, Mr. Poppe and Ms. Bhouraskar threatened her, telling her that she should have been arrested along with her husband, but that she was not arrested because she had a young son. *(Id.* ¶ 40.)

In its response to defendants' motion for reconsideration, plaintiff has submitted the declarations of Ms. Bhouraskar, Mr. Poppe and Lieutenant John Mendez, an NYPD officer who participated in the March 12, 2003 seizures. (*See* docket no. 108.) In his declaration, Lt. Mendez states that on the day of the seizure, there were approximately 15-20 police officers present, as well as music and film industry representatives, some of whom were accompanied by their attorneys. (*Id.* ¶¶ 5, 6.) The police officers were responsible at all times for collecting, packaging and removing the seized items at all three locations, after industry representatives identified counterfeit or unauthorized items. (*Id.* ¶ 8.) Mendez states that "[a]t no time

residence on the day of the search because he was expecting the package. (*Id.* ¶¶ 23, 24.)

According to Ms. Kumar, Mr. Poppe opened the package for Mr. Singh and threw its contents onto the living room floor, mixing the DVDs from the package with the items placed in the living room by the NYPD. *(Id.* ¶¶ 33-35.) Ms. Kumar claims that although she told Mr. Poppe not to mix the DVDs from the package with the other items, Mr. Poppe continued to do so. *(Id.* ¶¶ 36-38.) Ms. Kumar states that later that day, Mr. Poppe and Ms. Bhouraskar threatened her, telling her that she should have been arrested along with her husband, but that she was not arrested because she had a young son. *(Id.* ¶ 40.)

In its response to defendants' motion for reconsideration, plaintiff has submitted the declarations of Ms. Bhouraskar, Mr. Poppe and Lieutenant John Mendez, an NYPD officer who participated in the March 12, 2003 seizures. (*See* docket no. 108.) In his declaration, Lt. Mendez states that on the day of the seizure, there were approximately 15-20 police officers present, as well as music and film industry representatives, some of whom were accompanied by their attorneys. (*Id.* ¶¶ 5, 6.) The police officers were responsible at all times for collecting, packaging and removing the seized items at all three locations, after industry representatives identified counterfeit or unauthorized items. (*Id.* ¶ 8.) Mendez states that "[a]t no time

residence on the day of the search because he was expecting the package. (*Id.* ¶¶ 23, 24.)

According to Ms. Kumar, Mr. Poppe opened the package for Mr. Singh and threw its contents onto the living room floor, mixing the DVDs from the package with the items placed in the living room by the NYPD. *(Id.* ¶¶ 33-35.) Ms. Kumar claims that although she told Mr. Poppe not to mix the DVDs from the package with the other items, Mr. Poppe continued to do so. *(Id.* ¶¶ 36-38.) Ms. Kumar states that later that day, Mr. Poppe and Ms. Bhouraskar threatened her, telling her that she should have been arrested along with her husband, but that she was not arrested because she had a young son. *(Id.* ¶ 40.)

In its response to defendants' motion for reconsideration, plaintiff has submitted the declarations of Ms. Bhouraskar, Mr. Poppe and Lieutenant John Mendez, an NYPD officer who participated in the March 12, 2003 seizures. (*See* docket no. 108.) In his declaration, Lt. Mendez states that on the day of the seizure, there were approximately 15-20 police officers present, as well as music and film industry representatives, some of whom were accompanied by their attorneys. (*Id.* ¶¶ 5, 6.) The police officers were responsible at all times for collecting, packaging and removing the seized items at all three locations, after industry representatives identified counterfeit or unauthorized items. (*Id.* ¶ 8.) Mendez states that "[a]t no time

during the Seizure were the attorneys allowed to handle the seized items", nor were industry representatives and/or their attorneys ever left alone with the defendants. (*Id.* ¶¶ 9, 10.) Mendez also states that in his opinion, "there were a sufficient number of persons in each of the three locations who could have witnessed plaintiff's counsel's alleged verbal threats and/or the alleged tampering of evidence," and that given the number of police officers present, "it would have been very difficult, if not impossible, for Plaintiff's counsel or any third party to tamper with the counterfeit items which were being seized by the NYPD." (*Id.* ¶ 12.)

In his declaration, Mr. Poppe states that he was contacted by NYPD officers in February 2003, concerning an NYPD investigation of Indian entertainment media piracy in Queens County. (Poppe Decl. ¶ 3.) Mr. Poppe states that, at the request of the NYPD, he arranged for various Indian media representatives to be present at the March 12, 2003 seizures to assist in identifying counterfeit media products and artwork. (*Id.* ¶¶ 7-9.) Mr. Poppe states that on March 12, 2003, he and the industry representatives were accompanied and transported to the three seizure location by members of the NYPD. (*Id.* ¶ 12.)

Mr. Poppe states that he was in the presence of numerous NYPD officers at all times during the seizures, that he was never alone with Ms. Kumar, and that he did not speak to Ms.

Kumar or any other third party at the Kumar residence. (*Id.* ¶¶ 19, 21-22.) He states that "Any claim that I somehow manipulated evidence obtained by the NYPD at the Kumar Residence is not only untrue, it is absurd in light of the fact that over 1,700 counterfeit products were identified and seized from . . . the Kumar Residence." (*Id.* ¶ 24.) Mr. Poppe does not directly address Ms. Kumar's allegation that he opened the package addressed to Mr. Singh and "mixed" the contents with infringing product seized from the Kumar residence. Mr. Poppe states that he left the Kumar residence to assist NYPD officers with paperwork at the precinct; he did not see Ms. Kumar as he left the Kumar residence, nor did he see or speak with Ms. Kumar at the precinct. (*Id.* ¶ 26.)

## II. DISCUSSION

A motion for reconsideration "shall be served within ten (10) days after the entry of the court's order determining the original motion[,]" Local Civil Rule 6.3, and is "proper when the court has overlooked matters or controlling decisions that, if considered, would mandate a different result." *Care Envtl. Corp. v. M2 Technologies Inc.*, No. 05-CV-1600, 2006 WL 1896326, at *2 (E.D.N.Y. July 10, 2006) (citations omitted); *see* Local Civil Rule 6.3. Here, defendants' motion for reconsideration was filed on September 10, 2007, over three months after the court's June 5, 2007 order, but within ten business days of August 27,

-7-

2007, the date of entry of Judge Block's order.  Defendants
assert that Ms. Kumar's June 14, 2007 declaration sets forth
matters not considered by the court in its June 5, 2007 order,
but does not explain why the motion for reconsideration could not
have been brought within ten days of the court's June 5, 2007
order.  Without determining whether defendants have properly
moved for reconsideration of the court's June 5, 2007 order
granting plaintiff's motion to quash the subpoenas served on its
counsel, the court addresses the defendants' motion.

A party may obtain discovery of any non-privileged
matter that is relevant to a claim or defense of any party. Fed.
R. Civ. P. 26(b)(1). However, a district court may limit

> [t]he frequency or extent of the use of
> discovery methods . . . if it determines
> that: (i) the discovery sought is
> unreasonably cumulative or duplicative, or is
> obtainable from some other source that is
> more convenient, less burdensome, or less
> expensive; (ii) the party seeking discovery
> has had ample opportunity by discovery in the
> action to obtain the information sought; or
> (iii) the burden or expense of the proposed
> discovery outweighs its likely benefit,
> taking into account the needs of the case,
> the amount in controversy, the parties'
> resources, the importance of the issues at
> stake in the litigation, and the importance
> of the proposed discovery in resolving the
> issues.

Fed. R. Civ. P. 26(b)(2)(C).  A district court may also limit
discovery "for good cause shown" by making "any order which
justice requires to protect a party or person from annoyance,

-8-

embarrassment, oppression, or undue burden or expense" including that the discovery not be had or that it be had only by a method other than that selected by the party seeking discovery. Fed. R. Civ. P. 26(c). Similarly, pursuant to Fed. R. Civ. P. 45, the court may "quash or modify the subpoena if it ... subjects a person to undue burden." Fed. R. Civ. P. 45(c)(3)(A)(iv). "The burden of persuasion in a motion to quash a subpoena and for a protective order is borne by the movant." *Jones v. Hirschfeld*, 219 F.R.D. 71, 74-75 (S.D.N.Y.2003) (citing *Dove v. Atl. Capital Corp.*, 963 F.2d 15, 19 (2d Cir. 1992)).

In the Second Circuit, "depositions of opposing counsel are disfavored." *United States v. Yonkers Bd. of Educ.*, 946 F.2d 180, 185 (2d Cir. 1991). The rationale behind the presumption against such discovery is that "'even a deposition of counsel limited to relevant and nonprivileged information risks disrupting the attorney-client relationship and impeding the litigation.'" *Alcon Labs., Inc. v. Pharmacia Corp.*, 225 F. Supp. 2d 340, 342 (S.D.N.Y. 2002) (quoting *Madanes v. Madanes*, 199 F.R.D. 135, 151 (S.D.N.Y. 2001)). However, the Second Circuit has noted that attorney depositions are not categorically prohibited and has directed district courts to adopt a "flexible approach" in determining whether depositions of counsel are

permitted.  Specifically, in *dicta*[2] contained in *Official Comm. of Unsecured Creditors of Hechinger Inv. Co. of Del., Inc. v. Friedman ("In re Friedman")*, 350 F.3d 65, 72 (2d Cir. 2003), the Second Circuit discussed and rejected the so-called *Shelton* rule applied by the Eighth Circuit, which held that parties seeking to depose "opposing trial counsel" must show that: (1) no other means exist to obtain the information sought through the deposition than to depose opposing counsel; (2) the information sought is relevant and not privileged; and (3) the information is crucial to the preparation of the case. *Shelton v. American Motors Corp.*, 805 F.2d 1323, 1327 (8th Cir. 1987).

Rather than adopt the "rigid" approach of the *Shelton* rule, the Second Circuit held that "the standards set forth in Rule 26 require a flexible approach to lawyer depositions whereby the judicial officer supervising discovery takes into consideration all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship." *In Re Friedman*, 350 F.3d at 67, 72.  The Second Circuit elaborated that:

> Such considerations may include the need

---

[2] As noted by the Second Circuit, the appeal in *In Re Friedman* was rendered moot after the attorney challenging the deposition agreed to be deposed.  However, the majority of the court noted that "a non-binding discussion of the merits will hopefully serve the useful purpose of cautioning about the limits of our prior rulings on a frequently litigated issue and perhaps avoid some needless appeals." 350 F.3d at 72 n.4.

>     to depose the lawyer, the lawyer's role in
>     connection with the matter on which discovery
>     is sought and in relation to the pending
>     litigation, the risk of encountering
>     privilege and work-product issues, and the
>     extent of discovery already conducted. These
>     factors may, in some circumstances, be
>     especially appropriate to consider in
>     determining whether interrogatories should be
>     used at least initially and sometimes in lieu
>     of a deposition. Under this approach, the
>     fact that the proposed deponent is a lawyer
>     does not automatically insulate him or her
>     from a deposition nor automatically require
>     prior resort to alternative discovery
>     devices, but it is a circumstance to be
>     considered.

*In Re Friedman*, 350 F.3d at 72. *See Patsy's Italian Rest., Inc. v. Banas*, Nos. 06-cv-729, 06-cv-5857, 2007 U.S. Dist. LEXIS 4114, at *7 (E.D.N.Y. Jan. 19, 2007).

Taking into consideration "all of the relevant facts and circumstances to determine whether the proposed deposition would entail an inappropriate burden or hardship," *In Re Friedman*, 350 F.3d at 72, the court finds that defendants have failed to set forth any additional matters which require reversal of the court's June 5, 2007 order quashing the subpoenas on plaintiff's counsel.

In their motion for reconsideration, defendants have focused solely on the alleged actions of Mr. Poppe during the March 12, 2003 seizures. Defendants contend that plaintiff's counsel "made themselves fact witnesses" in this case by choosing to be present at the seizures, and that "[i]nformation about the

raid and their actions during the raid inside the defendants' house and their arguments and conversations with the defendants during the raid can only be obtained from them." (Docket no. 104, Letter by defendants dated 9/10/07, at 5.) The court disagrees, based on the declarations submitted by Bela Kumar, plaintiff's counsel and Lt. Mendez.

The court notes that Mr. Poppe's deposition is sought by defendants based solely on the allegations of Ms. Kumar regarding his alleged acts during the seizure, acts which Mr. Poppe denies and which defendants have never presented to the court until the instant motion, despite the fact that this case was filed on August 10, 2005, and that the seizures occurred on March 12, 2003.[3] Allowing defendants to depose plaintiff's counsel would serve little purpose, other than to disrupt and prolong this litigation, because it is clear that Mr. Poppe would only deny Ms. Kumar's allegations. Defendants will not be prejudiced if they are unable to depose plaintiff's counsel, because they remain free, if they wish, to present the unrebutted testimony of Ms. Kumar regarding Mr. Poppe's actions.

Ms. Kumar's allegations regarding Mr. Poppe's actions--

---

[3] The court notes that in her prior, April 17, 2007 declaration, Ms. Kumar states that she only saw Mr. Poppe and Ms. Bhouraskar enter her house during the seizure and go into the basement, and that: "I am not aware of what Mr. Poppe and Ms. Bhouraskar did inside my house, but they were inside for a long period of time." (Kumar 4/17/07 Decl. ¶¶ 19, 20.)

that he "mixed" DVDs from a package addressed to Mr. Singh with the materials collected by NYPD officers from defendants' residence, and that he and Ms. Bhouraskar "threatened" her--are also of tenuous relevance to the claims and defenses in this action.  Among their affirmative defenses, for example, defendants have asserted that plaintiff had knowledge of widespread violation of its copyrights, that plaintiff's own authorized dealers distributed infringing materials to retail stores, including defendants, and that retailers like the defendants had no knowledge that their actions were considered copyright infringement.  (*See* docket no. 8, Answer of Rakesh Kumar, Bela Kumar and Yatin Entertainment, Inc., ¶¶ 51, 52, and 55.)  Ms. Kumar's claims regarding Mr. Poppe's actions have no bearing on these affirmative defenses, nor on plaintiff's claims, and thus do not justify permitting the deposition of Mr. Poppe.  *See ResQNet.com, Inc. v. Lansa, Inc.*, No. 01 Civ. 3578, 2004 U.S. Dist. LEXIS 13579, at *12 (S.D.N.Y. July 21, 2004) (finding that defendant was not permitted to depose plaintiff's counsel regarding affirmative defense that it had not pled).

The court notes, too, that numerous other witnesses were present at the seizures, including industry representatives and NYPD officers, whom defendants could have deposed regarding Mr. Poppe's actions during the seizure, had they been inclined to do so.  *See Stauber v. City of New York*, Nos. 03 Civ. 9162, 03

Civ. 9163, 03 Civ. 9164, 2004 U.S. Dist. LEXIS 7973, at *8 (E.D.N.Y. May 7, 2004) (finding deposition of plaintiff's counsel to be inappropriate where defendants could depose NYPD officials regarding their conversations with plaintiff's counsel, and plaintiff's counsel's statements to NYPD officials had a "tenuous relationship . . . to . . . the plaintiffs' claims or the City's defenses").

In contrast to the defendants' failure to demonstrate the necessity of the depositions, the court finds that allowing the depositions of plaintiff's counsel would present a substantial burden on plaintiff and disrupt this litigation by submitting plaintiff's counsel to interrogation by opposing counsel, when fact discovery is nearly closed. Allowing the depositions of plaintiff's counsel would also likely lead to further motion practice to disqualify plaintiff's counsel. *See, e.g., Nelson v. Ulster County*, No. 06-cv-1057, 06-cv-1058, 2007 U.S. Dist. LEXIS 58267, at *14-18 (N.D.N.Y. Aug. 7, 2007) (addressing defendants' motion to disqualify plaintiffs' attorney because of his dual roles as a witness and advocate); *see also* 22 N.Y.C.R.R. § 1200.21(c) (Code of Professional Responsibility, Disciplinary Rule 5-102(c)) (requiring, with certain exceptions, an attorney to withdraw as counsel when "a lawyer learns or it is obvious that the lawyer ought to be called as a witness on a significant issue on behalf of the client"). Given this court's

determination that plaintiff's counsel has no "significant" or relevant testimony regarding the claims and defenses in this action, the court is not willing to impose on the parties the substantial burdens of prolonged litigation by permitting the depositions of plaintiff's counsel.

With regard to the documents sought by the subpoenas, the court notes that plaintiff has already provided defendants access to all documents and materials related to the seizures on March 12, 2003. Defendants have not specifically sought reconsideration of the court's June 5, 2007 order as it relates to the other documents sought by the subpoenas, i.e., any non-privileged and non-work product documents related to (1) plaintiff's counsel's work in registering the copyrights of plaintiff's films, (2) plaintiff's counsel's other litigation related to plaintiff's films, and (3) plaintiff's counsel's representation of thirty-four individuals and entities as it relates to plaintiff's films. Accordingly, the court finds no basis for reconsideration of its June 5, 2007 determination that the documents sought in the subpoenas are not relevant to the claims and defenses in this action.

### **III. CONCLUSION**

For the reasons set forth above, the Court denies defendants' motion for reconsideration of the June 5, 2007 order granting plaintiff's motion to quash the subpoenas served on its

counsel.

**SO ORDERED.**
Dated: October 25, 2007
       Brooklyn, NY

                                        _____/s/_____
                                        KIYO A. MATSUMOTO
                                        United States Magistrate Judge
                                        Eastern District of New York